THE LAW OFFICES OF
# CONRAD J. BENEDETTO

1405 Chews Landing Road – Suite 21
Laurel Springs, NJ 08021
Telephone: (856) 500-2727
Facsimile:   (856) 401-7834

CONRAD J. BENEDETTO *
WILLIAM T. ROZELL **
DANIEL J. MCCRACKEN***
CHRISTOPHER J. SAWBY*


\*     MEMBER OF PA & NJ BAR
\*\*    MEMBER OF PA & NC BAR
\*\*\*   MEMBER OF NJ BAR

PHILADELHIA  OFFICE
1615 South Broad Street
Philadelphia, PA 19148
Phone: (215) 389-1900
Facsimile:   (215)-271-8910


August 12, 2015


**VIA ELECTRONIC COURT FILING**
Honorable Renee Marie Bumb, U.S.D.J.
United States District Court
District of New Jersey
Mitchell H. Cohen Building &
U.S. Courthouse
4th & Cooper Streets
Camden, NJ 08101


            Re:     **The Estate of Jerame Cameron Reid, et al., v. City of Bridgeton, et al.**
                    **Civil Action No. 15-01831 (RMB-AMD)**
                    **Defendant's Request for a Pre-Trial**
                    **Conference Pursuant to Court Rule I.A**


Dear Judge Bumb:

        Please accept this letter as Plaintiff's Response in Opposition to the State Defendants'

letter requesting a Pre-Motion Conference pursuant to Rule I.A of Your Honor's Individual

Rules and Procedures.   The State Defendants allege that Plaintiff's Amended Complaint is ripe

for Dismissal as to these Defendants under Fed. R. Civ. P. 12(b)(1) and (6).   Plaintiff

respectfully submits that the Amended Complaint is not ripe for dismissal.


        With respect to the State Defendants, Plaintiff alleges in her Amended Complaint that

Cumberland County Prosecutor Jennifer Webb-McRae, pursuant to a pattern of unlawful behavior, knowingly failed to follow State required policies and procedures while conducting internal affairs investigations despite conflicts of interests arising in her Office, and failed to supervise and audit local police agencies within her Office's jurisdiction, including the Bridgeton Police Department.

Plaintiff alleges in her Amended Complaint that Defendant Honig, as Director of the Attorney General's Office Division of Criminal Justice, knowingly failed to perform his legal duty to supervise Cumberland County Prosecutor Webb-McRae, and that Defendant Hoffman, as Acting Attorney General, knowingly failed to perform his legal duty to ensure that Defendant Honig and the Division of Criminal Justice fulfilled their duty to properly supervise Prosecutor Webb-McRae.

These Defendants' willful actions were a direct and proximate cause of the Plaintiff's Decedent, Jerame Cameron Reid's death.

The State Defendants allege that Plaintiff's claims as to these Defendants are ripe for dismissal under Fed. R. Civ. P. 12(b)(1) and (6).   More specifically, these Defendants allege that they are entitled to Eleventh Amendment sovereign immunity, and that Plaintiff fails to satisfy the Iqbal pleading requirements.   These Defendants further allege that they are not persons amenable to suit in their official capacities, and that Plaintiff has failed to allege personal involvement on their parts.   Finally, these Defendants allege they are entitled to qualified immunity as to Plaintiff's Federal individual capacity claims.

Plaintiff submits that the claims against the State Defendants are not ripe for dismissal at this time.   Plaintiff alleges in her Amended Complaint that there has been a history and pattern of unlawful behavior, by Defendant Webb-McRae, and her Office, of:   knowingly failing to follow required policies and procedures while conducting internal affairs investigations, conducting internal affairs investigations despite conflicts of interests arising in her office, and failing to supervise and audit local police agencies within her Office's jurisdiction, including the Bridgeton Police Department, to ensure the agencies' compliance with State and County internal affairs policies and procedures.

Plaintiff further alleges that Defendant Webb-McRae and her Office conducting internal

affairs investigations despite conflict of interests arising in her office, failing to follow required policies and procedures while conducting internal affairs investigations, and failing to supervise the Bridgeton Police Department to ensure its compliance with State and County internal affairs policies and procedures resulted in the Police Department, and its officers, including Defendants Days and Worley, continuously violating the constitutional and civil rights of citizens to be free from unlawful traffic stops and excessive and unnecessary force.

Under New Jersey law, the Attorney General is authorized to establish the rules governing how use-of-force incidents are investigated.   See N.J.S.A. 52:17B-98 (providing for the "general supervision of criminal justice by the Attorney General as chief law enforcement officer of the State, in order to secure the benefits of a uniform and efficient enforcement of the criminal law and the administration of criminal justice throughout the State").   "Through the issuance of Attorney General Law Enforcement Directive No. 2006-5 (hereinafter: "Directive"), the Attorney General exercised this constitutional and statutory authority by establishing the basic process by which incidents are investigated when a police officer uses force against a civilian.   The Directive provides that investigations to determine the lawfulness of police use of force are not conducted by police agencies, but rather are conducted by and under the direct supervision of a County Prosecutor or the Division of Criminal Justice." Supplemental Law Enforcement Directive Amending Attorney General Law Enforcement Directive No. 2006-5. (Attached hereto as Exhibit A).

This Supplemental Law Enforcement Directive, Amended on July 28, 2015, also requires that "the Prosecutor shall as expeditiously as feasible determine whether any actual or potential conflict of interest exists that might undermine public confidence in the impartiality and independence of the investigation." Id.   Conflicts of interests may apply to any member of the leadership team of the office, or any person assigned to participate in or supervise the use-of-force investigation. See Id.

Plaintiff's Amended Complaint sufficiently alleges facts to support her claims that the State Defendants, among other things, failed to comply with State law, policies and procedures requiring they properly conduct internal affairs investigations, be cognizant of any conflicts of interests in their offices, and properly supervise and audit local police agencies within their

jurisdiction, thus establishing that these claims should survive dismissal under Rules 12(b)(1) and (6).   For these reasons, the State Defendants' request for a Pre-Motion conference should be denied.

Respectfully Submitted,

*Conrad J. Benedetto*

Conrad J. Benedetto

CJB/jg
Enclosures
C: Deborah B. Rosenthal, Esquire via Electronic Court Filing
   Brian P. Wilson, Esquire via Electronic Court Filing
   Brian G. Flanagan, Esquire via Electronic Court Filing

# EXHIBIT "A"

CHRIS CHRISTIE
*Governor*

KIM GUADAGNO
*Lieutenant Governor*

*State of New Jersey*
OFFICE OF THE ATTORNEY GENERAL
DEPARTMENT OF LAW AND PUBLIC SAFETY
PO BOX 080
TRENTON, NJ 08625-0080

JOHN J. HOFFMAN
*Acting Attorney General*

## SUPPLEMENTAL LAW ENFORCEMENT DIRECTIVE AMENDING
## ATTORNEY GENERAL LAW ENFORCEMENT DIRECTIVE NO. 2006-5

**TO:**       Director, Division of Criminal Justice
            Superintendent, New Jersey State Police
            All County Prosecutors
            All County Sheriffs
            All Chief Law Enforcement Executives

**FROM:**    John J. Hoffman, Acting Attorney General

**DATE:**    July 28, 2015

**SUBJECT:** **Supplemental Law Enforcement Directive Regarding Uniform Statewide
            Procedures and Best Practices for Conducting Police-Use-of-Force
            Investigations**

Under New Jersey law and practice, prosecutors and police departments are required to follow well-established procedures when responding to a law enforcement officer's decision to employ deadly force. Recent events across the nation present an opportunity, and responsibility, to examine and to enhance those practices and procedures as appropriate to ensure that use-of-force investigations are conducted fairly, expeditiously, thoroughly, and impartially.

The New Jersey Attorney General has broad authority under our Constitution and statutory law to establish and enforce uniform statewide standards that police and prosecutors must follow. For example, in this State, the rules governing when and in what circumstances a law enforcement officer is authorized to use physical, mechanical, enhanced mechanical, or deadly force are established by the Attorney General through the promulgation of the Attorney General's Use of Force Policy and supplemental use-of-force policies concerning specified types of weapons and ammunition. So too, the Attorney General is authorized to establish the rules governing how use-of-force incidents are investigated. See N.J.S.A. 52:17B-98 (providing for the "general supervision of criminal justice by the Attorney General as chief law enforcement officer of the State, in order to secure the benefits of a uniform and efficient enforcement of the criminal law and the administration of criminal justice throughout the State").

Through the issuance of Attorney General Law Enforcement Directive No. 2006-5 (hereinafter: "Directive"), the Attorney General exercised this constitutional and statutory authority by establishing the basic process by which incidents are investigated when a police officer uses force

against a civilian. The Directive provides that investigations to determine the lawfulness of police use of force are not conducted by police agencies, but rather are conducted by and under the direct supervision of a County Prosecutor or the Division of Criminal Justice.

The Directive further provides that critical decisions are subject to multiple levels of independent review. For example, the Directive specifies that in determining whether the use of force was lawful, the circumstances of the incident must be presented to a grand jury, composed of 23 civilians, for its independent review unless the undisputed facts indicate that the use of force was justified under the law. Grand juries traditionally serve to ensure the rights of the accused and to assure the community that civilians, not just law enforcement officials, decide whether a criminal prosecution should be initiated.

In any case where a County Prosecutor overseeing the investigation decides not to present the matter to the grand jury for its review, that decision itself is subject to substantive review and approval by the Director of the Division of Criminal Justice. This independent review and oversight process is made possible by the Attorney General's supervisory authority as the State's chief law enforcement officer, and pursuant to the Attorney General's specific statutory authority to participate in or supersede any criminal investigation. See N.J.S.A. 52:17B-107(a).

Although New Jersey's existing procedures for investigating use-of-force incidents are already among the most comprehensive and rigorous in the nation, it is appropriate to strengthen those investigative standards and protocols to ensure that best practices are followed uniformly across the State. Accordingly, pursuant to the authority vested in me by the Constitution of the State of New Jersey and by the Criminal Justice Act of 1970, N.J.S.A. 52:17B-97 to -117, I hereby direct that Attorney General Law Enforcement Directive No. 2006-5 is amended and supplemented as follows:

1.      Definitions.

        As used in this Supplemental Directive:

        a.      "Director" means the Director of the New Jersey Division of Criminal Justice.

        b.      "Law enforcement agency" means any agency or department with law enforcement or prosecution powers and responsibilities operating under the authority of the laws of the State of New Jersey.

        c.      "Law enforcement officer" means any law enforcement officer operating under the authority of the laws of the State of New Jersey.

        d.      "Principal of the investigation" or "principal" means a law enforcement officer

whose conduct is the subject of the investigation conducted pursuant to this Supplemental Directive and Attorney General Law Enforcement Directive No. 2006-5.

e.     "Use-of-force investigation" or "investigation" means an investigation conducted pursuant to Attorney General Law Enforcement Directive No. 2006-5 of any use of force by a law enforcement officer involving death or serious bodily injury to a person, or where deadly force is employed with no injury, or where any injury to a person results from the use of a firearm by a law enforcement officer. These terms include an investigation of the use of such force by an officer while acting in the performance of official duties or exhibiting evidence of his or her authority notwithstanding that the officer was not on duty when the force was used. These terms do not include a criminal investigation of the use of force by an officer who was not acting in performance of official duties or exhibiting evidence of his or her law enforcement authority (e.g., while committing an act of domestic violence).

2.     Scope and Supersedure.

This Supplemental Directive applies to all use-of-force investigations as defined herein, and supersedes any contrary provision of Attorney General Law Enforcement Directive No. 2006-5. Any provision of Attorney General Law Enforcement Directive No. 2006-5 not inconsistent with this Supplemental Directive shall remain in force and effect.

3.     Comprehensive Conflicts Inquiry to Inform Supersession/Recusal Decisions.

When the investigation is conducted by the County Prosecutor, the Prosecutor shall as expeditiously as feasible determine whether any actual or potential conflict of interest exists that might undermine public confidence in the impartiality and independence of the investigation. As part of this comprehensive conflicts inquiry, the Prosecutor shall determine whether any member of the leadership team of the office (e.g., the County Prosecutor, First Assistant Prosecutor, Chief of Detectives, etc.), has had any personal or professional interaction with or relationship to the principal(s) of the investigation that might reasonably create an actual or potential conflict of interest for the member or office. The Prosecutor likewise shall determine whether any person assigned to participate in or supervise the use-of-force investigation has had any such personal or professional interactions with or relationship to the principals(s) of the investigation. The Prosecutor also shall determine whether the principal(s) of the investigation is/are expected to testify on behalf of the State in pending matters being prosecuted by the Prosecutor's Office, and whether the principal(s) of the investigation has/have, within the preceding 5 years, been assigned to a task force operating under the direct supervision of the Prosecutor's Office.

The County Prosecutor within 3 days of initiating the investigation shall report the results

of the comprehensive conflicts inquiry to the Director. The County Prosecutor shall have an ongoing responsibility to update the comprehensive conflicts inquiry report based on new information or the involvement of additional persons in the investigation. The initial report and any updates to that report shall be made in a manner and on a form as shall be prescribed by the Director. The Director shall develop and make available forms to facilitate the comprehensive conflicts inquiry reporting process.

Based on the information in the comprehensive conflicts inquiry report, and any such additional information as the Director may require the Prosecutor to provide, the Director shall determine whether the interests of justice would best be served by superseding the investigation, assigning the investigation to another County Prosecutor's Office, ordering the recusal of any person or persons from the investigation, or taking such other actions as may be needed to ensure the impartiality and independence of the investigation.

When the investigation is conducted by the Division of Criminal Justice, the Deputy Director responsible for overseeing the Attorney General Shooting Response Team, or other Assistant Attorney General designated by the Director, shall undertake the comprehensive conflicts inquiry, and shall report thereon to the Director. The Director shall determine whether any actions are needed to ensure the impartiality and independence of the investigation.

4.      Authorization to Disseminate Investigative Information to Principals and Other Witnesses.

To prevent contaminating a witness's personal recollection of events, express prior authorization from the assistant prosecutor or assistant/deputy attorney general supervising the investigation, or his or her designee, is required before information learned in the course of the use-of-force investigation may be shared with or provided to any law enforcement or civilian witness to the use-of-force event, including a principal of the investigation. An employee of a law enforcement agency shall not directly or indirectly (i.e., through another person) share information learned in the course of the use-of-force investigation, including but not limited to police video recordings or information learned from reviewing such videos, with any principal or other law enforcement or civilian witness without such prior authorization. Nor shall any law enforcement officer who is a witness to the use-of-force incident, including a principal, receive any such information from any sworn or civilian employee of a law enforcement agency without first obtaining authorization from the assistant prosecutor or assistant/deputy attorney general supervising the investigation, or his or her designee.

Any dissemination or receipt of investigative information without prior authorization as required by this section shall be reported promptly to the assistant prosecutor or assistant/deputy attorney general supervising the investigation, or his or her designee, who shall investigate the circumstances. The potential effects of any unauthorized dissemination or receipt of investigative information may be considered in determining whether the interests of justice would be served by

presenting the matter to a grand jury for its review, see section 6, and also may be considered in determining whether the interests of justice would be served by superseding the investigation, assigning the investigation to another County Prosecutor's Office, ordering the recusal of any person or persons from the investigation, or taking such other actions as may be needed to ensure the impartiality and independence of the investigation pursuant to section 3. Any law enforcement officer or civilian employee who knowingly violates this section shall be subject to discipline.

5. <u>Procedures to Ensure That Investigations Are Conducted Independently From the Agency Whose Officer(s) Employed Force.</u>

    a.    *General Rule Excluding Investigators From the Same Agency as the Officer(s) Who Employed Force.*

Except as may expressly be authorized pursuant to subsection b. or c. of this section, no employee of the police department or agency that employs the principal(s) of the investigation shall participate in the investigation or attend any investigative activities (e.g., interviews of principals or other witnesses), provided however that nothing herein shall be construed to preclude an officer employed by that department or agency from acting as a first responder to the scene of the use-of-force incident, from providing or facilitating medical assistance to any injured person, from helping to secure the scene (e.g., to control traffic or to prevent civilians from accessing the scene), or from participating in a be-on-the-lookout (B.O.L.O.) search for or pursuit of any person(s) suspected of a crime related to the use-of-force incident.

    b.    *Authorized Assistance for Good and Sufficient Cause.*

Notwithstanding the general rule established in subsection a. of this section, the County Prosecutor or designee, or Director or designee, may for good and sufficient cause authorize an officer or civilian employed by the department that employs the principal(s) of the investigation to assist in the investigation in the following circumstances:

        i.    *CSI Unit.*

Officers or civilians employed by a principal's department who have specialized crime scene investigation skills may be authorized to collect or document physical evidence at the scene when the County Prosecutor or designee, or the Director or designee, determines that the use of these personnel is necessary to support the investigation, provided that such personnel operate under the direct supervision of the on-scene assistant prosecutor or assistant/deputy attorney general overseeing the investigation, and further provided that the officers or employees shall operate independently of their ordinary chain of command and report directly to the County Prosecutor or designee, or to the Director or designee. Because of the exigent need

to dispatch officers or civilians with specialized crime scene investigation skills without delay, the County Prosecutor or Director may issue a standing order authorizing the use of an agency's CSI unit and personnel assigned to that unit, provided that the Prosecutor or Director finds in writing that such standing authorization is necessary to ensure the prompt collection/documentation of evidence by qualified personnel following a use-of-force incident, and that without such a standing order, a reasonable probability exists that evidence at the scene will not be collected/documented in a timely and proper manner.

ii.     *Forensic Laboratory Examiners.*

Officers or civilians employed by a principal's department may be authorized to perform laboratory, ballistics, or other forensic tests or examinations where the County Prosecutor or designee, or the Director or designee, determines that the use of such laboratory facility/forensic unit/personnel is necessary to support the investigation, and further provided that such personnel shall operate independently from their ordinary chain of command and report directly to the County Prosecutor or designee, or to the Director or designee.

iii.    *Other Specialized Expertise.*

Officers or civilians employed by a principal's department may be authorized to assist the investigation through their specialized knowledge, skills, non-English language proficiency, or training not otherwise accounted for in subsection b(i) or (ii), provided that the County Prosecutor or designee, or the Director or designee, determines that their specialized knowledge, skills, non-English language proficiency, or training is necessary to support the investigation, balancing practical, logistical, and operational needs against the possibility that such participation might undermine public confidence in the impartiality and independence of the investigation, and further provided that such personnel shall operate independently of their ordinary chain of command and report directly to the County Prosecutor or designee, or to the Director or designee.

iv.     *Agency Liaison.*

An officer or civilian employee of the department may be designated by the County Prosecutor or designee, or the Director or designee, to serve as a liaison to the investigative team to facilitate obtaining departmental documents (e.g., personnel or internal affairs records, records involving other cases, etc.), identifying employees and providing contact information, identifying and locating local residents/witnesses, and performing other ministerial support functions.

c.      *Composition of Attorney General Shooting Response Team.*

In accordance with the provisions of section 2 of Attorney General Law Enforcement Directive 2006-5, the Attorney General Shooting Response Team (SRT), which shall operate under the direction and supervision of an assistant or deputy attorney general designated by the Director, shall be staffed by Division of Criminal Justice detectives and New Jersey State Police Major Crimes detectives. All personnel assigned to the SRT shall operate independently of their ordinary chain of command and report directly and exclusively to the assistant or deputy attorney general designated by the Director.

d.      *Documentation of Reasons for Authorizing Assistance.*

The County Prosecutor or designee, or Director or designee, authorizing an exemption pursuant to subsection b(i), (ii), or (iii) of this section shall: 1) document the reasons for the exemption in the case file, or in the case of a standing order pursuant to subsection b(i), include a copy of the standing order and justification therefor in the case file, and 2) indicate in any report provided to the Director or Attorney General pursuant to section 6 of this Supplemental Directive that personnel employed by the agency that employs a principal of the investigation participated in the investigation, explaining the reasons for the exemption.

6.      <u>Decision to Present Matter to Grand Jury.</u>

a.      *Presumption of Grand Jury Review.*

Except as provided in subsection b. of this section, the County Prosecutor, or Director in matters investigated by the Attorney General Shooting Response Team, shall present a matter to a grand jury for its independent review if: 1) the use of force resulted in death or serious bodily injury, or 2) the interests of justice would be served by having the matter reviewed by a grand jury. In determining whether the interests of justice would be served by having the matter reviewed by a grand jury, the County Prosecutor or Director shall consider all relevant circumstances, including whether review of the matter by a grand jury would enhance public confidence in the integrity, thoroughness, and impartiality of the investigation, and whether there had been any significant or knowing violation of or deviation from the restriction established in section 4 of this Supplemental Directive.

b.      *Circumstances Where Grand Jury Review is not Required.*

Notwithstanding the provisions of subsection a(1) of this section, the County Prosecutor or Director shall not be required to present the matter to the grand jury where the undisputed facts indicate that the use of force was justifiable under the law. Nothing herein shall be construed to preclude presenting the matter to the grand jury where the County Prosecutor or Director determines

that the interests of justice would be served by having the matter reviewed by a grand jury.

        c.        *Review of Decision to Present Matter to a Grand Jury.*

If the County Prosecutor determines in accordance with Attorney General Law Enforcement Directive No. 2006-5 and this Supplemental Directive that the matter need not be presented to a grand jury for its independent review, the Prosecutor shall prepare and submit a report to the Director summarizing the results of the investigation and explaining the reason for the Prosecutor's recommendation. The Director shall review the Prosecutor's findings and legal analysis. The Director may require the Prosecutor to supply additional information or analysis, and may direct the prosecutor to conduct further investigation and report thereon. The Director shall make the final determination whether the matter should be presented to a grand jury. While affording appropriate deference to the recommendations of the County Prosecutor in consideration of local community interests, the Director shall make an independent assessment of the Prosecutor's factual findings to determine whether facts are disputed, and also shall make an independent assessment whether presentation to a grand jury would serve the interests of justice. The review performed pursuant to this section shall be deemed to satisfy the requirements of section 10 of Attorney General Law Enforcement Directive No. 2006-5.

In matters investigated by the Attorney General Shooting Response Team, if the Director determines that the matter need not be presented to a grand jury, the Director shall prepare and submit a report to the Attorney General summarizing the results of the investigation and explaining the reason for the Director's determination. The Attorney General or designee may require the Director to supply additional information or analysis, and may direct the Director to conduct further investigation and report thereon. The Attorney General or designee shall make the final determination whether the matter should be presented to a grand jury, applying the same standard of review as would apply to the Director's review of a County Prosecutor's recommendation.

7.        <u>Best Practices When Presenting Matters to the Grand Jury.</u>

        a.        *Continuing Legal Education Course on Police Use-of-Force Grand Jury Presentations.*

The Director of the Division of Criminal Justice in consultation with the County Prosecutors and the Attorney General's Advocacy Institute shall develop a continuing legal education course on the legal, practical, ethical, and policy issues concerning the presentation of police use-of-force cases to a grand jury. The Attorney General's Advocacy Institute shall make this course available on at least an annual basis. Once available, every assistant prosecutor or assistant/deputy attorney general assigned to present a use-of-force case to a State or county grand jury shall be required to attend the course. In addition, the course materials shall be provided to every assistant prosecutor in the State, and to all assistant and deputy attorneys general in the Division of Criminal Justice.

        b.       *Uniform Grand Jury Instructions.*

Because a grand jury is authorized only to issue a "true bill" (when it decides that there is a basis to indict) or a "no bill" (when it declines to indict), the prosecutor presenting the matter shall instruct the grand jury on the underlying offense(s) (e.g., homicide, attempted murder, aggravated assault, etc.) and all applicable justification defenses. The Division of Criminal Justice has developed model grand jury instructions concerning the affirmative justification defenses that may apply (e.g., use of force in law enforcement under N.J.S.A. 2C:3-7, use of force in self protection under N.J.S.A. 2C:3-4, and use of force in protection of others under N.J.S.A. 2C:3-5). See N.J.S.A. 2B:22-9 (explicitly requiring that the grand jury be instructed on the justification defense of use of force in law enforcement.). The assistant prosecutor or assistant or deputy attorney general who presents the matter shall read to the grand jury all applicable model instructions.

        c.       *Separate Grand Juries to Decide Police Use-of-Force Issues and Underlying Criminal Activity That Precipitated Police Force.*

The underlying offense that gave rise to the police use of force (e.g., a crime alleged to have been committed by a civilian who was injured by police force) shall be presented to a different grand jury than the grand jury that will decide whether the police use of force was unlawful.

8.      Public Statement on Results of Investigations Not Resulting in Prosecution.

To enhance transparency in conducting use-of-force investigations, in any instance where the matter is not presented to a grand jury for its review, or where the matter is presented to a grand jury and the grand jury returns a "no bill" (i.e., declines to issue an indictment), the County Prosecutor, or the Director in matters investigated by the Attorney General Shooting Response Team, shall prepare a statement for public dissemination. The statement shall include: 1) specific findings of the investigation concerning the factual circumstances of the incident, 2) specific findings of the investigation concerning the lawfulness of the police use of force under the New Jersey Code of Criminal Justice, 3) a statement explaining that the comprehensive conflicts inquiry required pursuant to section 3 of this Directive was conducted, and 4) a statement explaining that the matter was reviewed by the County Prosecutor, or the Director in matters investigated by the Attorney General Shooting Response Team, and that all relevant provisions of this Supplemental Directive have been complied with.

The public statement shall comply with all rules governing grand jury secrecy and the need to protect the rights of witnesses and to prevent discouraging witnesses from providing information or cooperating with investigations in future cases. Notwithstanding the foregoing, the statement's findings shall include sufficient detail about the circumstances of the use of force to explain why the matter is not being prosecuted as a criminal offense.

The County Prosecutor, or Director in matters investigated by the Attorney General Shooting Response Team, shall provide a copy of the statement to the Attorney General, or his designee, not less than 5 days before its public dissemination. Once released to the public, the County Prosecutor or Division of Criminal Justice shall make the statement available on its internet website.

9.      Referrals for Administrative Review.

In any instance where the matter is not presented to a grand jury for its review, or where the matter is presented to a grand jury and the grand jury returns a "no bill" (i.e., declines to issue an indictment), the County Prosecutor, or the Director in matters investigated by the Attorney General Shooting Response Team, shall, as appropriate, refer the use-of-force incident to the appropriate agency for administrative review in accordance with the Attorney General's Internal Affairs Policy and Procedures manual. The County Prosecutor or Director shall monitor the review and take such actions as are necessary to ensure that the review is completed in a timely fashion, and that appropriate actions are taken based on the results of the administrative review.

10.     Advisory Group to Study and Enhance Police-Use-of-Force Investigations.

The Director shall establish an Advisory Group consisting of members of the community and representatives from law enforcement as the Director deems appropriate. The Advisory Group will meet on a quarterly basis to advise the Attorney General on how to improve the process for investigating police use-of-force incidents. The Advisory Group shall study and provide advice to the Attorney General on any circumstances or conditions that impede or delay investigations, and also on ways to enhance the process for explaining investigation results to the public. See also section 11.

11.     Community Relations and Outreach Programs.

To enhance public confidence in the integrity and impartiality of use-of-force investigations, it is vitally important for law enforcement executives to reach out to and engage community and faith-based leaders before use-of-force incidents occur. The Director of the Division of Criminal Justice shall confer with the County Prosecutors to discuss efforts that have been and are being undertaken across the State to establish positive relations of trust with community and faith-based leaders on matters concerning the use of force by law enforcement as part of a broader range of community-engagement activities.

The Director, in consultation with the County Prosecutors, should develop and disseminate model programs to explain the investigative process, the statutory and constitutional rights afforded to law enforcement officers whose use of force is subject to investigation, and how the presumption of innocence applies, and that the State at trial would be required to disprove an asserted justification defense beyond a reasonable doubt. In addition to explaining the standards and procedures for

conducting use-of-force investigations, the model community outreach programs should explain the law and policies governing the use of force by law enforcement.

Each County Prosecutor within 120 days of the effective date of this Supplemental Directive shall report to the Attorney General on efforts that have been or will be undertaken in his or her jurisdiction to engage community and faith-based leaders in discussions concerning police use-of-force matters.

12.   Questions.

Any questions concerning the interpretation or implementation of this Supplemental Directive shall be addressed to the Director, or designee.

13.   Effective Date.

This Supplemental Directive shall take effect immediately, and its provisions shall apply to use-of-force investigations initiated before the effective date to the extent practicable.


John J. Hoffman
Acting Attorney General



ATTEST:


Elie Honig
Director, Division of Criminal Justice

Dated: July 28, 2015